## Case No. 1,976.

### In re BROWN.

[The case reported under above title in 10 Hunt, Mer. Mag. 377, is the same as Case No. 1,985.]

## Case No. 1,977.

### In re BROWN.

[3 Int. Rev. Rec. 134.]

District Court, N. D. New York. April 16, 1866.

INTERNAL REVENUE—INCOME TAX—AUTHORITY OF ASSESSOR.

[1. Act Cong. June 30, 1864 (13 Stat. 226), relating to the assessment and collection of an income tax, and by the fourteenth section empowering the assessor to examine the taxpayer as to property liable to taxation, does not authorize an examination as to returns and payment thereon made prior to the passage of the act.]

[2. Nor does the section authorize a re-examination of the assessment after the assessor has accepted the returns, assessed the tax thereon, made a return to the collector, and the tax has been paid.]

[In the matter of Thomas Brown. Proceeding by Otis F. Presbrey to punish said Brown, as for a contempt, for refusing to submit to examination under the act of June 30, 1864, relating to the income tax. The matter was submitted by agreement with the same effect as if an attachment had issued. Proceeding dismissed.]

William A. Dart, Dist. Atty., for Otis F. Presbrey, assessor.

John Ganson, for Thomas Brown.

SMALLEY, District Judge. The case is submitted upon the following agreed state of facts:

Thomas Brown, who at the times hereinafter mentioned resided and now resides at the city of Buffalo, within the 30th district of the state of New York, made returns of his income for the years 1862 and 1863 under the internal revenue act [of 1862; 12 Stat. 434, § 6] to the assessor of said district, at the respective times specified in copies of such return hereto annexed. Among other things contained in the said returns, as made, was an item of interest received by Mr. Brown in 1862 and in 1863, on the bonds of the Buffalo, New York and Erie Railroad Company, amounting in each of those years to the sum of $1,050. The assessor made an assessment on each of the said returns as made by Mr. Brown, and transmitted the assessments thus made in his lists to the collector of the said district. The assessment for the special income tax of 1864 was made by the said assessor on the return made by Mr. Brown for the year 1863, pursuant to special instructions received by him to that effect from the department at Washington. After each of said assessments had been made and transmitted to the collector as aforesaid, Mr. Brown paid to the collector of the said district the tax so assessed and transmitted by the assessor. Such payments were made at the following times: The income tax of 1862 was paid August 29, 1863. The income tax of 1863 was paid July 26, 1864. The special tax of 1864 was paid December 13th, 1864. The assessor, subsequent to such payments, claimed that Mr. Brown received interest on bonds of the said railroad company owned by him in each of the years 1862 and 1863 to the amount of $8,400, instead of the sum returned by him, and in the opinion of the said assessor the returns in this respect contained an understatement of the amount of bonds owned and of the interest received by Mr. Brown.

The assessor, on the 20th day of July, 1865, summoned Mr. Brown to appear before him, under a summons issued to Mr. Brown (of which a copy is hereunto annexed), and to give testimony as stated in the summons. Mr. Brown, in obedience to the summons, appeared before the assessor to give evidence and answer interrogatives relative to his returns. The assessor asked him how many bonds he held in 1863 of the Buffalo, New York and Erie Railroad Company, and he answered that he held, till the spring of 1862, $120,000 of such bonds, but that he sold all of them save $15,000 in the spring of 1862, before any coupons of that year were payable, and that he has not had any interest in any of them since; that he received no interest on any of the bonds so sold by him after the 1st of November, 1861, and had since received interest on $15,000 of railway bonds only, being the sum of $1,050 mentioned in said returns. The assessor then asked Mr. Brown, to whom he sold the $105,000 of bonds in the spring of 1862. Mr. Brown declined to answer that question, and claimed the law did not authorize the assessor to require of him to whom he made the sale, nor make it obligatory on him to answer to whom the sale was made. The assessor then said he must answer the interrogatory, and was bound to disclose to whom he sold the bonds referred to; that if he did not, an application would be made by him to an officer to compel him to answer. Mr. Brown thereupon volunteered to go before his honor, Judge Hall, the same as if a regular application had been made by the assessor for an attachment, and one had been issued to bring him before said judge.

The parties now appear and submit this matter for decision, in like manner as if an attachment had been issued, and the case is to be decided and disposed of as if the said Brown was arrested and brought before me

on an attachment. The ill health of Judge Hall preventing him from examining the case, it has been brought before me for examination and decision.

It is insisted upon in behalf of Mr. Brown: First—That the fourteenth section of the act of 1864 does not apply to returns made and acted upon prior to the 30th of June, 1864. Second—That the assessor had not any authority to require Mr. Brown to answer the question under consideration. Third—That congress had not the power to authorize the assessor to institute the investigation, or to subject a party refusing to answer in such a case to the trial and punishment prescribed in the fourteenth section of the act of 1864. The case states that the returns for each year were duly and seasonably made, and delivered by Mr. Brown to the assessor, and that the assessor made his assessments thereon, and transmitted them to the collector before the passage of the act of the 30th of June, 1864 [15 Stat. 226], and that the special income tax of 1864 was assessed on the return made by Brown for the year 1863, and in pursuance of special instructions from the internal revenue bureau at Washington. That the taxes on all these assessments were paid by Brown in the years 1863 and 1864 to the collector, and that not until after all of these payments had been made (nor until July, 1865, when he summoned Brown before him), did the assessor make any complaint or allegation that there was any error or understatement in either of said Brown's returns.

The aforesaid fourteenth section provides, among other things, "that if any person shall deliver or disclose to any assessor, or assistant assessor, any list, statement, or return, which in the opinion of the assessor is false or fraudulent, or contains any understatement or undervaluation, it shall be lawful for the assessor to summon such person, his agent, or other person having possession, custody, or care of books of account containing entries relating to the trade or business of such person, or any other persons he may deem proper, to appear before such assessor and produce such books at a time and place therein named, and to give testimony or answer interrogatories under oath or affirmation respecting any objects liable to duty or tax aforesaid, or the lists, statements, or returns thereof or any trade, business, or profession liable to any tax or license aforesaid. In case any person so summoned shall neglect or refuse to obey such summons according to its exigency, or to give testimony or to answer interrogatories as required, it shall be lawful for the assessor, upon affidavit proving the facts to the judge of the district court, or a commissioner authorized to perform the duties of such judge at chambers, to apply for an attachment against such person as for a contempt. It shall be the duty of said judge or commissioner to hear such application, and, if sat-

isfactory proof be made, to issue an attachment directed to some proper officer for the arrest of such person, and upon his being brought before him, to proceed to a hearing of the case, and upon such hearing, the judge or commissioner shall have power to make such order as he shall deem proper to enforce obedience to the requirements of the summons and punish such person for his default or disobedience."

This proceeding is in the nature of an order upon Brown to show cause why he should not be punished as for a contempt, in refusing to answer the interrogatory put to him by the assessor. Brown has appeared before me; the duty of the assessor is performed. It now becomes my duty to examine the case and make such order as I deem proper to enforce the law. This internal revenue act is in this country novel in its character, very stringent and highly penal in many of its provisions, particularly in the 14th, 15th and 42d sections. The 14th section in its terms only makes provision for cases which may thereafter arise. There is nothing in its language that indicates any intention on the part of the legislature that it should have any retrospective effect. The general rule in the construction of such statutes is, that they shall be construed to apply only to future cases, unless they are made, by clear and explicit language, to embrace past transactions. This rule is too well settled to require authorities to sustain it. I will refer to but one. In Sanford v. Bennett, 24 N. Y. 22, the court of appeals say: "As such legislation is very unusual, and would, in most cases, be highly objectionable, the judges should require very plain and unequivocal language, before determining to give a statute such a retroactive effect." But it is contended by the district attorney that this 14th section is remedial, and therefore should be construed to extend to past cases. In one sense, perhaps, it may be considered remedial, but taken in connection with the 15th section, which subjects a person making a false or fraudulent statement or return, to fine and imprisonment, I cannot regard it as merely remedial. It may, by an unscrupulous assessor, be used to obtain, from any person making a return, evidence to convict himself of a crime. It confers upon the assessor an extraordinary inquisitorial power, and I think it ought to be most strictly construed.

Brown then, when called upon by the assessor to answer the interrogatory in the case stated, did not come within the provisions of the 14th section. He had, before the passage of that act, made his returns to the assessor, the assessor had accepted them, assessed the taxes thereon, and returned them to the collector to whom Brown had paid the taxes. The 14th section does not give the assessor the power in any case to re-examine his assessment after the annual list containing the assess-

ment has been transmitted to the collector. It is only by force of the 19th section that power is conferred to re-examine. That section makes it the duty of the assessor to publish in a newspaper and post up, in at least four public places in the district, notifications to all persons concerned when and where he will hear appeals or other questions relative to the assessments of the assessor or assistant assessor, giving not less than ten days notice thereof, "provided that no appeal shall be allowed to any party after he shall have been assessed, and the annual list containing the assessment, have been transmitted to the collector of the district. And the assessor shall have the power to re-examine and determine upon the assessments and valuations and rectify the same as shall appear just and equitable." This section gives the same power to the assessor "on the hearing of appeals, to require the attendance of witnesses, the production of books, &c., and under the same penalties as is provided in the 14th section." It may be claimed that this clause giving power to the assessor to re-examine, &c., is not in express terms confined to cases of appeal. But I think an examination of the whole section shows clearly that it has reference only to appeals and was not intended to be extended beyond. Besides it is only on the hearing of appeals this 19th section gives the assessor power to require the attendance of witnesses, the production of books, &c. This appears to me clearly to be the true legal construction to be given to these two sections, and I think most certainly it is the just and equitable one. There should be some limit of time, beyond which this inquisitorial power of the assessor to examine into all the private business transactions of every person, should not be exercised. If the assessor can exercise this power after he has transmitted the list to the collector, he may do so without limit as to time in one or ten years thereafter. The tax-payer cannot be heard after the list has gone to the collector; why then should the assessor be permitted on his own motion to review his own action, after the list has passed from him to the proper officer to whom it belongs? It appears to me that the assessor should be regarded as to such list functus officio—his power is spent. If he afterwards ascertains that any list or return is false and fraudulent, he may cause the person making it to be indicted and punished therefor under the 15th section; or for perjury under the 42d section of the act.

It follows from this view of the case that the assessor had no authority to call Brown before him, when he did; and that Brown was under no obligation to answer any question put to him. Having come to that conclusion, it is not necessary for me to consider the other questions in the case, which have been presented by counsel. The order is that Brown be discharged without day.